ATLANTIC CITY AND SHORE RAILROAD COMPANY, AP-PELLANT, v. STATE BOARD OF ASSESSORS ET AL., RESPONDENTS.

Argued June 29, 1915—Decided January 28, 1916.

1. The act of 1906 (*Pamph. L., p.* 644; *Comp. Stat., p.* 5283) for the taxation of street railroad corporations, and that of 1913 (*Pamph. L., p.* 448) for the taxation of street railway systems, are inapplicable to the case of a steam railroad company upon or over whose tracks a street railway system is operated.

2. The title of the act of 1913 (*Pamph. L., p.* 448), making the act of 1906 (*Pamph. L., p.* 644; *Comp. Stat., p.* 5283), for the taxation of street railroad corporations, applicable to street railway systems, fails to express the object of taxing steam railroad companies and of repealing *pro tanto* the act of 1884 for the taxation of railroads and canals.

3. The act of 1913 (*Pamph. L., p.* 448), making the act of 1906 (*Pamph. L., p.* 644; *Comp. Stat., p.* 5283), for the taxation of street railroad corporations, applicable to street railway systems, contravenes the constitutional provision that every law shall embrace but one object.

4. The act of 1913 (*Pamph. L., p.* 448), making the act of 1906 (*Pamph. L., p.* 644; *Comp. Stat., p.* 5283), for the taxation of street railroad corporations, applicable to street railway systems, is unconstitutional as applied to a steam railroad company upon or over whose tracks a street railroad system is operated.

5. Under the act of 1913 (*Pamph. L., p.* 448), making the act of 1906 (*Pamph. L., p.* 644; *Comp. Stat., p.* 5283), for the taxation of street railroad corporations, applicable to street railway systems, it is improper to impose a franchise tax therein provided for upon a steam railroad corporation.

---

On appeal from the Supreme Court, whose opinion is reported in 87 *N. J. L.* 137.

The prosecutor is incorporated under the General Railroad act. It has tracks in Atlantic City lying in part on land owned by it in fee-simple and in part on land dedicated by the original map of Atlantic City to a railroad, now by the consent of the railroad company used as public streets. It has for all but short sections of its tracks no special franchise so-called, *i. e.,* none but the general franchise under its charter, or that of other railroad corporations whose rights it exercises, and has not acquired or received the assent of the municipality to lay its tracks or run its cars except for the sections in South Carolina avenue, Atlantic City, in Eighth street, Ocean City, and in Ventnor. Such rights as it has come, with those exceptions, from charters under the General Railroad act, or special railroad charters, the original dedication of some of the land to railroad purposes, and the acquisition of the rest in fee. The business of the prosecutor is in part that of a street railway carrying local passengers, and in part that of a steam railroad carrying mail, freight and express matter, and through passengers. It seeks by this proceeding to set aside a franchise tax of five per cent. on gross receipts assessed against it under authority of the act of 1913. *Pamph. L., p.* 448. The prosecutor questions the applicability of that act and its validity if applicable.

For the appellant, *Bourgeois & Coulomb.*

For Atlantic City, *Theodore W. Schimpf.*

The opinion of the court was delivered by

SWAYZE, J. The legislation under which this tax is imposed originated in an act of 1900 (*Pamph. L., p.* 502; *Comp. Stat., p.* 5298), entitled "An act for the taxation of all the property and franchises of persons, co-partnerships, associations or corporations using or occupying public streets, highways, roads or other public places, except municipal (corporations) and corporations taxable under the act entitled 'An act for the taxation of railroad and canal property.'" A tax under this act was sustained by the Supreme Court, as a

franchise tax. *Paterson and Passaic Gas Co.* v. *Board of Assessors,* 69 *N. J. L.* 116; *affirmed,* 70 *Id.* 825. The question of the constitutionality of the act was not there considered. In *North Jersey Street Railway Co.* v. *Jersey City,* 73 *Id.* 481, the constitutionality of the act was directly passed upon and sustained. The judgment was affirmed in the Court of Errors and Appeals on a somewhat different line of reasoning (74 *Id.* 761), but the validity of the act of 1900 was not questioned, and it was held that the tax imposed was a franchise, not a property, tax. This was followed in *Phillipsburg Railroad Co.* v. *Board of Assessors,* 82 *Id.* 49. If the question were a new one it might well be argued that a title indicating that the object of the act was to provide for the taxation of the property and franchises, limited the scope of the act to a property tax on franchises similar to that imposed on other property, and did not indicate an intent to impose a franchise tax as distinguished from or in addition to a property tax. In view of the decisions under the act of 1900, this question is not now open, whatever other constitutional objections there may be. We shall recur to the constitutional questions but deal first with the applicability of the legislation of 1906 and 1913 to the Atlantic City and Shore railroad. The act of 1906 purports to impose taxes upon the property and franchises of street railroad corporations which have acquired authority or permission from the state or any taxing district or municipality, and which have the right to use or occupy, and are occupying, streets. Section 1 enacts that all the property, real and personal, and franchises of street railroad corporations which have acquired or may hereafter acquire authority or permission from this state, or from any taxing district or municipality therein, and which have or may hereafter have, the right to use or occupy and are occupying streets, highways, roads, lanes or public places in this state, shall hereafter be valued, assessed and taxed as hereinafter provided. The act is limited to corporations which have acquired authority or permission from the state or a municipality to use or occupy public highways or places. This limitation was no doubt due to the fact that a franchise tax was

provided for and there could be no such tax unless there were such a franchise to be taxed.

To make the act applicable the street railroad corporation must have acquired authority or permission from the state, a taxing district, or a municipality to use or occupy the streets; it must have the right to use or occupy streets; and it must be in fact occupying them. The title of the act of 1913 is "A supplement to an act entitled 'An act for the taxation of the property and franchises of street railroad corporations using or occupying public streets, highways, roads, lanes or other public places in this state,' approved May twenty-third, one thousand nine hundred and six, and by such supplement providing for the assessment and collection of a franchise tax in cases where street railway systems are operated by steam railroad companies, or operated over and upon the tracks of steam railroad companies." The body of the act merely enacts that the provisions of the act to which it is a supplement (the act of 1906) respecting an annual franchise tax upon the annual gross receipts of street railroad corporations shall apply to the street railway systems mentioned in the title. It is not easy to determine exactly what the legislature meant by a street railway system. It must be something different from a street railroad corporation, since they were taxed by the act of 1906 and no supplement was needed to reach them. It must be something different from a steam railroad corporation, since the act of 1913 speaks of systems operated by steam railroad corporations and systems operated upon or over the tracks of a steam railroad company. It is difficult to understand what is meant by a street railway system operated upon or over steam railroad tracks. Such a system seems to lack the essential of a street railway, namely, the rails. The right to lay rails in a public street is the distinguishing feature of a street railway. And since a street railway system even when it includes rails, is not a legal entity, but rather a kind of property, the legislature must have contemplated that the street railway system to be taxed be owned by a natural or artificial person, by whom the tax might be paid. There is no natural person in this case, and no artificial per-

son except the Atlantic City and Shore Railroad Company. The only intelligible construction we can give to the language of the act of 1913 as applied to this case is that it attempts to impose a franchise tax on the street railway business of the Atlantic City and Shore Railroad Company. So the state board of assessors construed it, for they undertook to separate the earnings of that corporation arising out of its street railway business from its other earnings as a steam railroad corporation.

There is no statutory authority for such action, probably because the legislature did not contemplate such a case. The tax is declared by the act itself to be a franchise tax, and must have been meant to reach the special franchise to lay rails and maintain poles and wires in the streets. That is what has always been understood to be the special franchise of a street railway, subject to this special form of taxation, which is justifiable only by reason of the existence of the special privilege. If there is a special franchise in the present case it does not come within the words of the act of 1906 for two reasons—*first,* because it is not the franchise of the street railway system but that of the steam railroad company, as has already been decided by this court (*Camden and Atlantic Railroad Co.* v. *Atlantic City,* 58 *N. J. L.* 316; *affirmed,* 60 *Id.* 242) ; *second,* because the street railway system did not acquire its right to occupy the streets so far as that right is a special privilege different from the right of any omnibus or other vehicle, from the state or a municipality, but from the steam railroad company which owned the rails. The steam railroad company, it is true, has its general franchise to be a corporation which it has acquired from the state. Under that general franchise, and the general franchises of other steam railroads to which it has succeeded, together with the original dedication, it has the right to run cars on the streets, but that franchise is already taxed as property under the act of 1884. That the legislature did not mean to impose in addition to that property tax, a special franchise tax, is apparent from the language of the act of 1913 which imposes the tax upon the street railway system which is, as already

stated, carefully distinguished by the act from the steam railroad corporation on whose tracks the system is operated.

The only other franchise acquired from the state or a municipality is that of the Central Passenger Railway in South Carolina avenue, Atlantic City; the right in Ventnor was granted to the West Jersey, and that in Ocean City to the Atlantic City and Ocean City, both steam railroad corporations, subject to the act of 1884. We shall deal with the South Carolina avenue section hereafter.

We think, therefore, that the acts of 1906 and 1913 are by their very terms inapplicable to the Atlantic City and Shore railroad. We are confirmed in this view by the fact that a different construction would render the act of 1913 unconstitutional for three reasons—*first,* its object would not be expressed in the title; *second,* the act would intermix things which have no proper relation to each other; and *third,* either a steam railroad over whose tracks a street railway system was operated would be taxed in a different way from other steam railroads, or street railway systems would be taxed in different ways and by both local assessors and the state board of assessors.

The object would not be expressed in the title since one main object at least would be the taxation of steam railroad companies or some steam railroad companies by a method different from that prescribed in the act of 1884 and a repeal *pro tanto* of that act. No such object is expressed in the title of the act of 1913. It is true the title states as one of the objects of the act the taxation of street railway systems, and if there were nothing more in the case, we might well hold that it was enough for the title to show an intent to tax the specially mentioned property or business, and that the fact that the tax fell on the steam railroad corporation was a mere incident—an effect of the legislation rather than its object.

One difficulty with that construction arises out of section 8 of the act of 1906, which enacts that the franchise tax and the property tax imposed by the act shall be in lieu of all other taxes now assessed or assessable against street railroad

corporations subject to taxation in pursuance of the act. To make this section applicable to street railway systems in accordance with the act of 1913, we must hold that the corporation taxable under the act shall have the same exemption from other taxation as the street railroad corporation has under the act of 1906; otherwise section 8 would be meaningless as applied to street railway systems. But if section 8 is applicable, the steam railroad corporation becomes exempt from taxation under the act of 1884 for the taxation of railroad and canal property, and that act is repealed by implication so far as concerns steam railroad companies upon or over whose tracks a street railway system is operated. The more serious difficulty arises out of the provision of the constitution that in order to avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object. This provision is naturally coupled with the requirement that the one object shall be expressed in the title. We have held that the title must give notice of the effect of the legislation to one conversant with the existing state of the law, and that the validity of the title is not to be determined by nice distinctions of etymology or definition of words, but by the facts of the case and the history of the legislation. *Sawter* v. *Shoenthal*, 83 *N. J. L.* 499, 501, 502. In that case and in *Seaside Realty Co.* v. *Atlantic City*, 76 *Id.* 819, the facts of the case and the history of the legislation permitted a wider meaning to be given to the words of the title than would otherwise have been permissible. The underlying principle was that the title must give notice of what was doing to one conversant with the subject. The reasoning condemns a title that naturally throws off his guard one conversant with the facts and history of legislation on the topic in hand. In the present case the taxation of railroads incorporated under the General Railroad act had been the subject of a series of acts beginning with 1884; the taxation of street railroads had been the subject of a series of acts beginning with the act of 1900. The methods of taxation were entirely different. The act of 1900 was care-

ful by its title and by its terms to exempt from its operation corporations under the General Railroad act, for it excepted them both in sections 1 and 9. Even in 1906, when the act under which the present tax is imposed was passed, the legislature carefully observed the distinction that had been made for many years for purposes of taxation between steam railroad corporations and street railroad corporations. That year was one of legislative activity in the taxation of steam rail-. roads. Three acts were passed on the subject. *Pamph. L.* 1906, *pp.* 121, 220, 571. All by their titles purported to be supplements to the act of 1884 for the taxation of railroad and canal property. When in that same year, the legislature undertook to legislate for the taxation of street railroads, they did so under a title which showed that only street railroad corporations were affected.

The two topics had been kept so distinct that no one conversant with the legislation would have supposed that in an act which by its title purported to be a supplement to the act for the taxation of street railroad corporations, the legislature would attempt to impose a franchise tax on steam railroad corporations. Much might be said in favor of the proposition that the use of steam railroads and street railroads is so similar—transportation of freight and passengers—that they may well be taxed under the same statute and in the same way. The argument was urged against the constitutionality of the Railroad Tax act of 1884, but rejected by this court. Whatever might have been said for the proposition prior to that decision, cannot now be said in view of the legislative practice of thirty years under that decision, especially in defence of an act that does not tax all steam railroads and does not tax all street railways alike. In our legislation as it stands with the act of 1884 unrepealed, taxation of steam railroads and taxation of street railroads are two distinct objects not to be intermixed in the same act under a title that does not give notice of any legislative intent to abandon the well settled practice.

ᶦThe construction contended for by the city would result also in a violation of the constitutional requirement of uni-

formity. The difference between street railroad corporations and street railway systems operated by steam railroads on the one side, and street railway systems operated on the tracks of steam railroad corporations on the other side is, under our tax laws, a difference in kind. The essential difference is that the first class have rails and tracks of their own; the second class run over rails and tracks of another corporation, which are taxable in a different way. Section 2 of the act of 1906 requires that the local assessors ascertain the value of the property of every street railroad corporation upon the streets and the value of its property not so located, and assess all such property at local rates. The act of 1884 requires the rails and tracks to be assessed as part of the main stem of the railroad. The local assessors must either exclude the rails and tracks altogether or they must assess some property right of the street railway system therein. The latter alternative is impossible in a case like the present, since the street railway system is itself not a legal entity, but only property, and cannot have property rights in something else; if this alternative were possible, the act would be unconstitutional since it would lead to an assessment of rails and tracks in part by local assessors, and in part by the state board of assessors, the very vice condemned by us in *Central Railroad Co. v. State Board of Assessors,* 75 *N. J. L.* 771. But if the local assessors adopt the first alternative and exclude the rails and tracks from the assessment of the property value, the difficulty is merely shifted to the state board of assessors, who in assessing the franchise tax must determine the gross receipts of a street railway system without track or rails, and apportion the total gross receipts of a steam railroad company, attributing so much to the street railway system maimed as it would be, and so much to the steam railroad company including that portion which is fairly attributable to the track and rails. The state board of assessors saw the difficulty and attempted to escape it by determining the separate earnings. It is, however, impossible to determine what are the gross earnings of a street railway system without rails: part of the gross receipts, even after the receipts for mail, freight, and express matter, and

for through passengers have been excluded, must be due to the use of the rails, and to impose a tax on those receipts is to impose a tax on the earnings of the steam railroad company as truly as if it were imposed on receipts for freight and through passengers.

Not only did the legislature fail to provide for such an impossible segregation of the earnings of the street railway system as the state board of assessors attempted, but the other provisions of the act are such as to render the attempt futile.

Section 2 of the act of 1906 requires the local assessors to ascertain the value of the property of every street railroad corporation (since 1913 street railway system) in or upon any public highway or place, and of its property not so located. Section 3 requires the local assessors to make a return to the state board of assessors of the value of all property assessed which is located in or upon any highway or public place. Section 6 requires the state board to apportion the franchise tax among the taxing districts in which the corporation (since 1913, system) is operating street railroads, in proportion to the value of the property located in or upon the public highways or places as shown by the statements so filed. We disregard the inaptness of the language of the act of 1906 to street railway systems, especially to street railway systems without rails of their own. The point now important is that the language is applicable only to a case where the property assessed has a fixed location, like a railway track. It is so inapt as applied to cars, wires and such other property, if any, as a street railway system without rails may metaphorically be said to have, that it would be obviously impossible for local assessors to make the assessment. The state board in the present case recognized this difficulty and undertook to make its own assessment under guise of equalizing and revising the valuations returned by the local assessors. No doubt this was necessary if any sensible result was to be reached, but the very fact that it was necessary demonstrates that the scheme of the act of 1906 as extended in 1913, if applied to street railway systems on a steam railroad company's tracks, requires an assessment of the property of some

## JUNE TERM, 1915. 229

*88 N. J. L.*      Atl. City & S. R. R. Co. v. State Bd. Assessors.

street railway systems by local assessors, and other street railway systems by the state board of assessors, or at best in part by local assessors, in part by the state board. This method has already been condemned by us as unconstitutional. *Central Railroad Co.* v. *State Board of Assessors,* cited above.

These views apply to most of the line of the prosecutor. They do not apply to the small section in South Carolina avenue owned by the Central Passenger Railway Company and operated under its special franchise from Atlantic City. That portion of the system is like other street railways except that it is operated by a steam railroad corporation. This fact does not prevent the railway being properly classified with street railroad corporations taxable under the act of 1906.

We are not now called on to decide whether we can exscind from the act the provision as to street railway systems operated on steam railroad company's tracks, when we must also, in order to save the provision as to street railway systems operated on their own tracks, go so far as to exscind part of the title also. The case as to the South Carolina avenue section may be decided on a narrower ground. The act requires the tax to be imposed on the street railway system. The state board has imposed it on the steam railroad company. It may be that the latter will have to pay the tax to avoid a lien on the South Carolina avenue section, but it is entitled to have the lien limited to that section and to have the tax imposed as the law directs. The state board of assessors did not determine the gross earnings of this section. We do not know that such a determination is even possible. The tax even to that extent, if we knew what it was, cannot be sustained. The result is that the judgment of the Supreme Court must be reversed and a judgment entered setting aside the tax, with costs in both courts.

WHITE, J. (dissenting). I am unable to agree with either the reasoning or the result of the majority opinion in this case. I think that the acts of 1906 and 1913 are applicable to and sustain the assessments in question, and that those acts are constitutional.

I agree with the proposition that the general steam railroad legislation and the street railway legislation provide for the establishment of separate and entirely distinct transportation systems, different in the nature of their respective purposes and of the service they are designed to render. One, the steam railroad system, imposes such an additional servitude upon a public highway, if it occupies one longitudinally, by reason of the fact that its purpose is to serve others than the highway traveling public, that the acquisition of the estate in the highway of abutting property owners is necessary in addition to its charter and other authority; whereas the other, the street railway system, being a part of the local highway conveniences of traffic, is a part of the highway servitude, subject to which the abutting property owners hold their titles. The steam railroad, under its legislation, is not a part of the street traffic conveniences of a municipality, whereas the street railway, under its legislation, is a part of such street traffic conveniences.

The legislature, for reasons satisfactory to itself and therefore presumably satisfactory to all the people of the state, whose spokesman it is, has seen fit to impose, for the benefit of the various municipalities, a franchise tax upon street railways performing this local highway service in such municipalities. In doing so it was careful to provide that such tax is not to apply to the entirely different and dissimilar franchises of the steam railroads to perform their general railroad service.

This tax was first levied by the act of 1900, and then by the act of 1906, supplemented by the act of 1913.

Through all of these acts, as I read them, there runs the same distinction between the true provinces of the two systems. The one which was a part of the local municipal highway or street service was, as such, to be taxed because of its franchise or permission to be a part of such service; the one which was not a part of that service was not to be so taxed.

Bearing this clear distinction in mind I find no difficulty in sustaining the sufficiency of the title of the act of 1906 with relation to the supplement of 1913. The effect of course

of the supplement of 1913 is to read its provisions into the act of 1906, and in consequence we have, as the completed legislation, an act entitled, "An act for the taxation of the property and franchises (held to be a franchise tax) of street railway corporations using or occupying public streets, highways, roads, lanes or other public places in this state," which act in its body, as supplemented, provides for—*first,* a franchise tax on street railway corporations which acquired their franchise or permission from the state or any municipality, and which, in consequence, have the right to and do occupy the streets in pursuance of such franchise or permission, and *second* (as provided by the 1913 supplement), a franchise tax on the operation of street railway systems in municipalities either by steam railroad corporations or upon the tracks of steam railroad corporations occupying the streets of such municipalities.

In other words, the act, which by its title is to reach the franchise to perform the class of service properly and technically described as street railway service, provides that the exercise of that franchise is to be taxed, whether such franchise was regularly and formally granted as such in the manner prescribed by the legislature to street railway *companies* incorporated for that purpose and receiving and exercising municipal permission to occupy its streets, or whether the franchise is in fact being exercised without such legislative and municipal grant, either by a steam railroad company or upon a steam railroad company's tracks laid in the municipal streets, whether laid for another purpose and by virtue of authority to so lay them for that other purpose, or laid without any authority whatsoever.

The exercise of the franchise to perform a street railway service as a part of the conveniences of the municipal highway, is to be taxed when in fact exercised, irrespective of whether its exercise is in pursuance of regular grant in the manner contemplated by the legislature, or is the result of an usurpation or assumption of such franchise without the authority so contemplated.

It will not do, it seems to me, to hold that this latter usurped franchise cannot be considered as included in the title of the act of 1906 on the ground that that title uses the words "street railway *corporations,*" in designating who are to be taxed. If the title had followed the language of the legislation which has provided for the incorporation of street railway "companies" to exercise street railway franchises, there might be more plausibility in the contention that the tax must consequently be limited to the franchises of street railway "companies" so incorporated. The title in question does not speak of street railway *companies,* but of street railway *corporations,* that is, as it seems to me, of all corporations exercising street railway franchises. Such corporations are in fact so far as the exercise of this franchise is concerned street railway corporations. This view is strengthened by the next succeeding words of the title, viz., "using or occupying public streets," &c. That is, any corporation using or occupying public streets for street railway purposes is included in the object expressed by this title. Certainly that construction, while conforming with the broad comprehension of the word "corporations," as contra-distinguished from the word "companies" as used in the legislation authorizing the incorporation of street railway "companies," is in accord with the proper spirit and purpose of the legislation in question, which was to tax in a certain way a particular thing, viz., the exercise of a certain class of franchises; and this fact, taken in conjunction with the well-recognized and proper duty of the courts to adopt a construction favoring constitutionality of legislative enactment rather than one defeating it, where a doubt exists, seems to me to lead imperatively to a decision sustaining this act of 1913.

But it is said that the act of 1913 has no application to the present case because the tax therein provided is a franchise tax on the exercise of the franchise or permission to operate a street railway system on the streets of Atlantic City, and that in fact the company-prosecutor, the Atlantic City and Shore Railroad Company, which is so operating this street railway, has never been granted the franchise so to do.

It seems difficult to understand just why a corporation, which for aught that appears, may have been created in the form of a steam railroad company instead of in that of a street railway company, for the sole purpose of escaping the payment of a tax on the exercise of a street railway franchise, should now be heard to say for its own benefit that a franchise which it is in fact exercising as its own, does not legally exist. Surely it will be time enough to give serious consideration to such a self-serving contention when the company shall have ceased to exercise the franchise. For reasons best known to itself this company has chosen to assume a legal form in its incorporation which precludes it from receiving the formal permission contemplated by the legislature to do the thing it is actually doing. So far as the municipal consent intended by the legislature is concerned, the company seems to have the substance of it in the acquiescence of the municipality and of the people resident therein, in the operation of the street railway by this company and its predecessor, also a steam railroad company, for the last twenty years and more. What is it then which goes to make up a franchise of the class, the exercise of which is intended by this act of 1913 to be taxed, which this company does not have? Nothing but its legal form of incorporation which it itself has chosen and which it says precludes it from legally doing what it admits it in fact is doing with all the substance of a franchise or permission which can exist for such a company.

This contention, that the act of 1913 cannot apply because the prosecutor-company has no legal franchise to do what it is doing, entirely loses sight, as it seems to me, of the fact that this tax is not a property tax but is a franchise tax. It is not a tax on the company's property right to its franchise, but is essentially a tax on the *exercise* of a franchise, quite apart from property in the franchise. It is, therefore, immaterial whether the company does or does not own the franchise. If it exercises the franchise, that is sufficient.

It is further said that the act of 1913 does not apply because the rails are a necessary part of a street railway system

and the rails in this case belong to another steam railroad company which leases them or their use to the company in this case.   Suppose the trolley poles were also leased instead of purchased, or the cars were leased, would the whole as operated be any the less a street railway system?  I think not.  That the legislature did not so regard it is obvious, for the act of 1913 provides for taxing a street railway system operated *on the rails of a steam railroad company* occupying the streets of a municipality.

· The tax is also criticised as being in fact a tax on the street railway "business" which the prosecutor-company is doing, for it is pointed out that the assessors computed the amount of the tax by separating the company's street railway receipts from its other receipts, and levying the prescribed percentage on the former.  This criticism loses its meaning when we remember that the method complained of is exactly that prescribed by the acts in question for ascertaining the amount of the franchise tax upon the exercise of this class of franchise.  They provide for a tax of this percentage on the gross receipts from this street railway "business."

For these reasons I vote to affirm the decision of the Supreme Court.

I am requested by Justices Garrison, Minturn and Kalisch, and by Judge Williams, to say that they concur in the views herein expressed.

*For affirmance*—GARRISON, MINTURN, KALISCH, WHITE, WILLIAMS, JJ.   5.

*For reversal*—CHIEF JUSTICE, SWAYZE, PARKER, VREDENBURGH, TERHUNE, HEPPENHEIMER, TAYLOR, JJ.   7.