DIVISION OF TAX APPEALS.

ATLANTIC CITY TRANSPORTATION CO., PETITIONER, v. FRANK E. WALSH, DIRECTOR OF THE DIVISION OF TAXATION, RESPONDENT.

For the year 1946.

Decided October 14, 1947.

For Atlantic City Transportation Co., *Thomas H. Munyan.*

For Frank E. Walsh, Director of the Division of Taxation, *Waller D. Van Riper,* Attorney-General (by *Max Eisenstein,* Assistant Attorney-General).

For the City of Atlantic City, *Leon Leornard.*

CONKLIN, COMMISSIONER. Two appeals were filed by the Atlantic City Transportation Co., from the assessments made by the Director of Taxation for the year of 1946 under the provisions of chapter 5 of the laws of 1940 as amended by chapter 21 of the laws of 1941, *N. J. S. A.* 54:31–45, *et seq.* One petition involves the question of the validity of the franchise tax levied under the provisions of paragraph 6, subparagraph (a) of the aforesaid act, and the other petition

questions the validity of the assessment of the gross receipts tax made under paragraph 6, subparagraph (b) of the same statute. Since common questions of law and fact are presented, they were tried and can be disposed of simultaneously.

The petitioner was incorporated as the Atlantic City Transportation Co., under the provisions of title 48, chapter 15 of the Revised Statutes, *N. J. S. A.*, which act applies to street railways. On December 1st, 1945, the petitioner took title to various properties together with the operations, rights, and franchises formerly owned by the Central Passenger Railway Co., the Atlantic City and Shore Railroad Co., the Atlantic City and Ocean City Railroad Co., and the West Jersey and Seashore Railroad Co.

In the purchase from the West Jersey and Seashore Railroad Co., the petitioner became the owner of a right of way 24.3 feet in width, which began at or near the car barn at the inlet in Atlantic City, and which right of way extended through Atlantic City, Ventnor City, Margate City, and the Borough of Longport. For the year 1945 an assessment was levied upon this right of way as first class railroad property, and the assessment paid. For the year 1946, no assessment as first class railroad property has been made and no taxes collected. The original plan or map of dedication of the City of Atlantic City, filed April 15th, 1853, covered only the area on either side of the right of way of the West Jersey and Seashore Railroad Co., from the inlet to California Avenue, and as the cities developed they acquired a strip of land on either side of this 24.3 feet right of way and made it a continuation of the original Atlantic Avenue. At the present time, Atlantic Avenue in the City of Atlantic City, is paved from curb to curb, including that area between the rails of the street railway, with the same type of pavement. Pedestrian and vehicular traffic use the paved portions on the right of way of the petitioner, and one not knowing the history of the development of Atlantic Avenue could not ascertain from observation that there was a private right of way through the city. The paving between the rails was originally done by the West Jersey and Seashore Railroad and since that time an agreement has been entered into between the petitioner and the City of Atlantic City that the railway would

maintain a row of Belgian blocks on the side of each rail, and that the city would keep the street in repair. There has never been any formal dedication or other abandonment of this right of way other than the user of the public. The portion in dispute is approximately 3.043 miles in length. The balance of the right of way in the City of Atlantic City, Ventnor City, Margate City and Longport is unpaved and does not enter into this dispute.

The Atlantic City Transportation Co., over the purchased lines, created two divisions, one known as the "Atlantic Avenue Division" and the other as the "Ocean City Division." The Atlantic Avenue Division runs from the inlet in Atlantic City to Longport, New Jersey, and return, a total of 8.31 miles. The Ocean City Division runs from Virginia Avenue and the Boardwalk in Atlantic City to Eighth Street and the Boardwalk in Ocean City, and goes through the cities of Pleasantville, Northfield, Linwood, and Somers Point, a total of 15.412 miles, making the total mileage of the petitioner 27.22 miles.

Paragraph 6, subparagraph (a), giving the formula in computing the franchise tax, provides as follows:

"(a) A tax computed at the rate of five per centum (5%) of such proportion of the gross receipts of such taxpayer for the preceding calendar year as the length of the lines or mains in this State, located along, in or over any public street, highway, road or other public place bears to the whole length of its lines or mains. In case the gross receipts of any such taxpayer for any calendar year shall not exceed fifty thousand dollars ($50,000.00) the tax on such taxpayer for such calendar year shall be computed at the rate of two percentum (2%) instead of at the rate of five percentum (5%)."

Thus, a factor used in determining the taxable gross receipts is arrived at by dividing the total number of miles located on a public place by the total length in miles of the street railway's operation. The petitioner questions the factor used by the Director of Taxation and claims that he was in error, as the Director determined the total mileage located in the public street to be 4.156 miles, and the petitioner claims it should have been 1.113 miles. This difference is caused by the Director's insistence that the portion of the petitioner's

right of way on Atlantic Avenue in the City of Atlantic City was line "located on a public place" within the meaning of the statute.

Paragraph 2 of chapter 5 of the Public Laws of 1940, as amended by chapter 21, of the laws of 1941, paragraph 2, subparagraph (g), defines a public place as follows:

"(g) 'Public street, highway, road or other public place' includes any street, highway, road or other public place which is open and used by the public, even though the same has not been formally accepted as a public street, highway, road, or other public place."

The statute is clear and explicit. It is not an attempt by the legislature to define what is a public street, highway, or other public place for any general purpose, but for the purpose of this statute only, and in particular the application of paragraph 6, subparagraph (a) of this act. *Clarkson* v. *Ley,* 106 *N. J. L.* 380; 148 *Atl. Rep.* 745; *O'Neill* v. *Johnson,* 99 *N. J. L.* 317; 123 *Atl. Rep.* 538.

We therefore feel that the Director used proper discretion in arriving at the amount of mileage in a public place to determine his factor of .175196020.

But we do believe that the Director was in error in using the figure of gross receipts in his computation of both the franchise tax and the gross receipts tax. The figures were arrived at as follows:

Atlantic City Transportation Co.
 Dec. 1, 1945, to Dec. 31, 1945 ............ $84,865.47
Atlantic City and Shore Railroad Co.
 Jan. 1, 1945, to Nov. 30, 1945 ........... 1,253,636.06
Atlantic City and Ocean City Railroad Co.
 Jan. 1, 1945, to Nov. 30, 1945 ........... 11,000.00
Central Passenger Railway Co.
 Jan. 1, 1945, to Nov. 30, 1945 ........... 4,497.43

 Total gross receipts as computed by the
 Director ......................... $1,353,998.96

Paragraph 15 of chapter 5 of the laws of 1940, the section under which the determination of the gross receipts was computed, reads as follows:

"15. When any corporation subject to taxation under this act shall acquire the rights, property and franchises of using and occupying public streets, highways, roads or other public places in this State, other than the right and franchise to operate autobuses or vehicles of the character described in Title 48, chapter fifteen, section forty-one to the end of the chapter, of the Revised Statutes (Revised Statutes, section 48:15–41 *et seq.*), of persons, copartnerships, associations or corporations then subject to an excise tax based upon its gross receipts, and shall retain such rights, property and franchises at the end of the calendar year in which such acquisition occurs, then and in such case on or before the first day of February of the succeeding year, such acquiring corporation shall return to the State Tax Commissioner in the manner and form required by this act and in addition to the statements of gross receipts, scheduled property and length of lines to be filed under this act, a statement showing the gross receipts from the business over, on, in, through or from the lines or mains of the persons, copartnerships, associations, or corporations whose rights, property and franchises were acquired as aforesaid, from January first of the year in which such property was acquired to the date of such acquisition, together with a statement showing the scheduled property and length of lines or mains as of July first of the year in which such acquisition took place, as hereinbefore required, unless such information has previously been supplied and filed with the State Tax Commissioner. The total of the gross receipts as shown in both of said statements to the State Tax Commissioner, or as otherwise ascertained by him, shall be used in ascertaining, fixing and apportioning the excise tax imposed by section six (a) of this act upon such acquiring corporation, and if said rights, property and franchises were acquired from a corporation subject to taxation under this act, then the total of the gross receipts as shown in both of said statements to the State Tax Commissioner, or as otherwise ascertained by him, shall be used in ascertaining, fixing and apportioning the excise tax imposed by section six (b) of this act upon such acquiring corporation."

This section provides that where the street railway acquires the rights, &c., of another street railway subject to an excise

tax based upon its gross receipts, then the gross receipts tax shall be figured on the basis of the gross receipts of the prior operator of the street railway.

As a general rule, a liberal construction must be given all tax laws for public purposes, and it is the duty of the courts to see that no one, by mere technicalities which do not affect his substantial rights, shall escape his fair proportion of the public expenses, and thus impose them upon others. *Paulison* v. *Taylor,* 35 *N. J. L.* 184.

But two of the petitioner's predecessors in title, the Atlantic City and Shore Railroad Co., and the Atlantic City and Ocean City Railroad Co., were chartered under the Railroad Act, *N. J. S. A.* 48:12–1, *et seq.,* and as such were in operation up to December 1st, 1945. *Atlantic City and Shore Railroad Co.* v. *State Board of Assessors et al.,* 88 *N. J. L.* 219; 96 *Atl. Rep.* 568. The Director was not within his rights in computing the gross receipts of those two railroad corporations in arriving at his total, as they were not corporations subject to taxation under the provisions of section 15, *supra.* The Central Passenger Railway Co. was subject to such a tax and its gross receipts for the previous year were reported.

It is our finding that the gross receipts for the year ending December 31st, 1945, that should have been considered by the Director are:

Atlantic City Transportation Co.  
    From Dec. 1, 1945, to Dec. 31, 1945 ........ $84,865.47  
Central Passenger Railway Co.  
    From Jan. 1, 1945, to Nov. 30, 1945 ....... 4,497.43  

    Total ............................ $89,362.90

Therefore, both the franchise tax and the gross receipts tax should have been determined by using gross receipts of $89,362.90, and the franchise tax by using the factor of .175196020.

The Director of the Division of Taxation should reassess, reapportion and recertify the franchise tax and the gross receipts tax for the year 1946 on the basis above set forth.

Judgment accordingly.