### 4233.  HAYES *v.* THE STATE.

1. An act is not unlawful, within the purview of the statute of this State defining involuntary manslaughter, unless it is prohibited by some valid law of the State.

2. A penal law which is of doubtful construction and in which the act denominated as a crime is described in terms so general and indefinite as to make the question of criminality dependent upon the idiosyncrasies of the men who may happen to constitute the court and jury, and is of such a nature that honest and intelligent men are unable to ascertain what particular act it seeks to condemn, is incapable of enforcement, and will be held to be null and void. So much of the act approved August 13, 1910 (Acts 1910, p. 92), regulating the use of automobiles, as undertakes to make penal the operation of an automobile on one of the highways of this State "at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of such highway, or so as to endanger the life or limb of any person or the

safety of any property," is too uncertain and indefinite in its terms to be capable of enforcement.

3. So much of the act of 1910 regulating the use of automobiles as makes it a misdemeanor to operate an automobile at a rate of speed greater than six miles per hour upon approaching a crossing of intersecting highways is sufficiently definite and certain in its terms to be capable of enforcement.

4. A city ordinance which undertakes to make punishable the operation of an automobile upon one of the streets of. the city "in a careless or reckless manner" is null and void, because it fails to sufficiently define the prohibited act.

5. Where there are two counts in an indictment, each charging the same offense, but varying the manner in which the criminal act is alleged to have been committed, and one count is bad and the other good, it will be presumed, where a general verdict of guilty was rendered, that the verdict was founded upon the good count, and that the jury disregarded the bad count.

6. A street or highway which extends to, but not beyond, another highway, crosses and intersects such highway, within the meaning of section 5 of the act of 1910 regulating the use of automobiles.

7. An indictment which charges the offense of involuntary manslaughter, in that the homicide was committed without any intention to do so on the part of the slayer, but while he was engaged in the commission of an unlawful act, is sufficient, although it does not expressly allege that the homicide was without malice.

8. Involuntary manslaughter in the commission of an unlawful act is not one of the felonies which can be punished as for a misdemeanor, upon the recommendation of the jury.

9. Failure of the judge to quash the second count in the indictment and to charge the jury that the accused could not be convicted upon the theory that he had violated the city ordinance of Atlanta set forth in the indictment, will not, under the facts of this case, demand that the judgment of conviction be set aside.

DECIDED JULY 23, 1912.

Indictment for. involuntary manslaughter; from Fulton superior court—Judge R. T. Daniel presiding. April 20, 1912.

The defendant was indicted for the offense of involuntary manslaughter in the commission of an unlawful act, it being charged that he unlawfully ran over and killed the person named in the indictment, with an automobile, at a point in the City of Atlanta, where Gordon street and Holderness street intersect and cross. It was alleged that the unlawful act consisted in a violation of the act of the General Assembly, approved August 13, 1910, entitled "An act to regulate the running of automobiles," etc., in that at the time of the homicide the defendant was driving his machine "at a rate of speed greater than was reasonable and proper, having regard to the traffic and use of said street or highway," and that

he "did run and operate said automobile so as to endanger the lives and limbs of persons using said street, and that he [the defendant], upon approaching the crossing and intersection of said streets, did not so run and operate said automobile as to have the same under control, but did run and operate the same at a greater rate of speed than six miles per hour, to wit, at a speed between fifteen and twenty miles per hour." It was further alleged in the indictment that the defendant was guilty of an unlawful act in that at the time of the homicide he was driving the automobile at such a rate of speed and in such a manner as was prohibited by an ordinance of the City of Atlanta, which provides that "it shall be unlawful for any driver or person in charge of an automobile to run or operate the same in a careless or reckless manner, whether said automobile is running under or over the speed limits herein provided. Said automobiles must be operated with due regard to the safety of persons and vehicles upon the streets and public places, and in such a manner as to avoid collisions therewith."

The accused demurred to the indictment, upon the following grounds: (1, 2) Because no offense was set forth in the indictment. (3) Because the indictment failed to allege that the homicide was without malice and without any mixture of deliberation. (4) Because it was not alleged that the unlawful act charged was such an act as in its consequences naturally tended to destroy human life. (5) Because the allegation that the machine was being driven "at a rate of speed greater than was reasonable and proper, having regard to the traffic and use of said street or highway," was a mere conclusion of the pleader. (6) Because the allegation that the machine was operated in such a way as to endanger the lives and limbs of persons using the street is a mere conclusion of the pleader. (7) Because the allegation that the machine was being run at a greater rate of speed than six miles per hour upon approaching the crossing and intersection of two streets is not an averment of an act prohibited by law. (8) Because the ordinance of the City of Atlanta set forth in the indictment is null and void, as being in conflict with the act of the General Assembly regulating automobiles, and is void for uncertainty and indefiniteness, and because the entire ordinance is not set out in the indictment. (9) Because the indictment is duplicitous, in that it charges the accused with the commission of a homicide committed

in violation of an act of the General Assembly, and in violation of an ordinance of the City of Atlanta. (10) Because so much of the act of the General Assembly of Georgia referred to in the indictment as provides that no person shall operate an automobile on any of the highways of the State at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of such highway, or so as to endanger the life or limb of any person or the safety of any property, is null and void for want of certainty, definiteness, and clearness, and fails to sufficiently define the acts and things which it undertakes to make unlawful and penal. (11) Because section 5 of the act of the General Assembly referred to in the indictment, and the ordinance of the City of Atlanta therein set forth, are both void, for lack of certainty and definiteness in defining the acts thereby prohibited and declared unlawful. The demurrer was overruled. The accused was convicted, and assigns error upon the overruling of his motion for new trial, and also upon the judgment refusing to sustain his demurrer.

*Evans & Evans, Hines & Jordan,* for plaintiff in error.
*Hugh M. Dorsey, solicitor-general, E. A. Stephens,* contra.

POTTLE, J. (After stating the foregoing facts.)

1. In this State involuntary manslaughter is thus defined: "Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence, in an unlawful manner: provided, that where such involuntary killing shall happen in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a riotous intent, or of a crime punishable by death or confinement in the penitentiary, the offense shall be deemed and adjudged to be murder." Punishment for involuntary manslaughter in the commission of an unlawful act is from one to three years in the penitentiary, and involuntary manslaughter in the commission or performance of a lawful act, where there has not been observed necessary discretion and caution, is punished as for a misdemeanor. Penal Code (1910), §§ 68, 69. At common law manslaughter was defined to be "the unlawful killing of another without malice, either express or implied; which may be either voluntarily, upon a sudden heat; or involuntarily, but in the commission of some un-

lawful act." 4 Blackstone's Commentaries, 191. It has been held that a lawful act done in an unlawful or negligent manner is in law an unlawful act. Commonwealth *v.* Hunt, 4 Met. 111 (38 Am. Dec. 346). In Indiana the definition of involuntary manslaughter is the same as it was at common law, and the Supreme Court of that State has held that an act may be unlawful within the meaning of the definition of involuntary manslaughter, although not subjecting the actor to criminal prosecution; and upon this principle a judgment of conviction of involuntary manslaughter was affirmed in a case where a railroad engineer carelessly and negligently ran his locomotive into a passenger-coach standing on the track, and thereby caused the death of one of its passengers. State *v.* Dorsey, 118 Ind. 167 (10 Am. St. Rep. 111). The statute of this State, however, draws a clear distinction between an unlawful act and a lawful act committed without the observance of due caution and circumspection. In this State it could not be held that a lawful act, however negligently or recklessly committed, is an unlawful act, within the purview of the statute defining and punishing involuntary manslaughter. An unlawful act within the meaning of our statute is an act prohibited by law, that is to say, an act condemned by some statute or valid municipal ordinance of this State. In order, therefore, to support an indictment for involuntary manslaughter in the commission of an unlawful act, some act must be alleged which is prohibited by a valid law.

2. It is contended that the act of the General Assembly of Georgia regulating the use of automobiles, and the ordinance of the City of Atlanta, both of which it is alleged in the indictment the defendant was violating at the time of the homicide, are so indefinite and uncertain as to be incapable of enforcement. It is the duty of the judicial department, wherever possible, to construe an act of the legislative department so as to make it valid and binding and give due effect to all of its terms. Hence, a statute ought not to be held void for uncertainty if it is possible to give a reasonably particular construction to its terms, so as to make them capable of enforcement. But while this is true, the State can not make an act penal without defining the act in terms sufficiently clear for any person to understand that in performing the act he is guilty of a violation of the statute. The maxim that "ignorance of the law is no excuse for crime" is founded upon the theory that the citizen

may ascertain the law and know that the act which he is performing has been condemned. If it is impossible for him to ascertain that a given act has been made penal, it would be manifestly unfair for the State to punish him for a commission of the act. If the law is of such doubtful construction, and describes the act denominated as a crime in terms so general and indeterminate, as to make the question of criminality dependent upon the idiosyncrasies of individuals who may happen to constitute the court and jury, and of such a nature that honest and intelligent men are unable to ascertain what particular act is condemned by the State, the law is incapable of enforcement and will be held to be null and void.

The foregoing proposition is supported by the authorities with practical unanimity. Reference to a few of the adjudicated cases will serve to illustrate the application of the rule above stated. In Ex parte Jackson, 45 Ark. 158, it was held that a statute making it a misdemeanor to "commit any act injurious to the public health or public morals, or the perversion or obstruction of public justice, or the due administration of the law," is void for uncertainty. A statute making it a crime for a railway corporation to charge, collect, or receive more than a just or reasonable rate of toll as a compensation for the transportation of passengers has been held to be unconstitutional. L. & N. R. Co. *v.* Commonwealth, 99 Ky. 132 (59 Am. St. Rep. 457, 33 L. R. A. 209, 35 S. W. 129). The same rule has been announced with reference to a statute which undertook to make penal the combining of two or more persons for the purpose of "mob violence," the statute not undertaking to define or designate what acts should be deemed or considered mob violence. Augustine *v.* State, 41 Tex. Crim. Rep. 59, 73 (96 Am. St. Rep. 765, 52 S. W. 77). The Supreme Court of the United States has said that "laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid. Before a man can be punished, his case must be plainly and unmistakably within the statute." United States *v.* Brewer, 139 U. S. 278-280 (35 L. ed. 190-193, 11 Sup. Ct. 538). A statute of Indiana undertook to make it unlawful for any person to haul over any of the turnpikes or gravel roads during certain conditions of the weather, on a narrow-tired wagon, a load of more than 2,000 pounds, or on a broad-tired wagon a load of more than 2,500 pounds. This statute was held to be too uncertain

and too indefinite, for the reason that the statute did not sufficiently describe a narrow-tired wagon and a broad-tired wagon. Cook v. State, 26 Ind. App. 278 (59 N. E. 489). The Supreme Court of Wisconsin has thus announced the rule: "A law which takes one's property or liberty as a penalty for an offense must so clearly define the acts on which the penalty is denounced that no ordinary person can fail to understand his duty and the departure therefrom which the law attempts to make criminal, since one can not be said to willfully violate a statute which is so contradictory or blind that he must guess what his duty is thereunder." Brown v. State, 137 Wis. 543 (119 N. W. 338). See, also, to the same effect: State v. Partlow, 91 N. C. 550 (49 Am. Rep. 652); Czarra v. Medical Supervisors, 25 App. Cas. Dist. Columbia, 443; State v. Ashbrook, 154 Mo. 379 (77 Am. St. Rep. 765, 48 L. R. A. 265, 55 S. W. 627); L. & N. R. Co. v. Railroad Commission, (C. C.) 19 Fed. 679; Lewis' Sutherland on Statutory Construction (2d ed.), § 83. In James v. Bowman, 190 U. S. 144 (23 Sup. Ct. 680, 47 L. ed. 979), the Supreme Court of the United States said: "It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government." The following language of the Supreme Court in *Savannah, F. & W. Ry. Co.* v. *Daniels,* 90 Ga. 610 (17 S. E. 648, 20 L. R. A. 416), is pertinent: "'The opinion of the court is supposed to be consistent in the construction of laws, and the interpretation adopted by the trial judge is subject to review by a court of last resort, whose construction is controlling in all similar cases, but the opinions of juries may vary and there may be different verdicts on exactly the same state of facts. It is highly important, to the public in general as well as to the railroad companies, that the duty imposed by this statute should be clearly defined and understood; but if the jury in each case could construe the law for itself, there would be no means of arriving at a construction which could be regarded as final, and the limits of the duty imposed must remain unsettled."

Let these principles be applied to the statute involved in the present case. It must be apparent that so much of section 5 of

the act of 1910, regulating the use of automobiles (Acts 1910, p. 92), as undertakes to make penal the operation of an automobile upon one of the highways of this State "at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of such highway, or so as to endanger the life or limb of any person or the safety of any property," is too uncertain and indefinite in its terms to be capable of enforcement. What rate of speed is reasonable and proper? Who should determine this question? What is this test as to the rate of speed which can be employed, and how is the driver of an automobile to know when he is driving at a rate of speed prohibited by the act? Manifestly this question can not be determined by the consequences which ensue from driving a machine. The law must so definitely and certainly define the offense that a person of reasonable understanding can know at the time of the commission of the act that the law is being violated. One jury might say that a certain rate of speed was reasonable and proper. Another jury might reach exactly the opposite conclusion from exactly the same state of facts and the same circumstances. One court might hold, upon a review of the facts, that the rate of speed used was in violation of the act, and another court might rule otherwise. We appreciate thoroughly the difficulty in prescribing the maximum rate of speed which can be employed in all cases, but this furnishes no reason why, in the language of the Supreme Court of the United States, the legislature should be permitted to set a drag-net and leave the courts to determine who shall be detained in the net and who should be set at liberty.

3. We do not, however, think that the first count in the indictment was subject to demurrer. It is averred that the accused was approaching the intersection of two streets; that he did not have his machine under control, and that he was operating the same at a greater rate of speed than six miles per hour, to wit, at a speed of between fifteen and twenty miles per hour. Section 5 of the act of 1910 expressly prohibits the operation of an automobile at a rate of speed greater than six miles per hour upon approaching a "crossing of intersecting highways." This part of section 5 is certainly sufficiently definite to enable any person coming within the operation of the act to know that it is a violation of the law, and a misdemeanor under the statute, to operate an automobile at such a point on one of the highways of the State at a greater

rate of speed than six miles per hour. Here the statute is clear and definite in its terms. It says, in effect, that under all circumstances and in all cases it shall be a misdemeanor to drive an automobile when approaching a crossing of highways at a rate of speed greater than six miles per hour.

It is insisted that under a proper construction of section 5 of the act, a greater rate of speed than six miles an hour is unlawful only when approaching a railroad crossing along one of the highways of the State. But we do not think a proper construction of the act limits the section to a railroad crossing. It says, when approaching a "crossing of intersecting highways and railroad crossings." We construe this to mean that it is unlawful to approach either a crossing of intersecting highways or a railroad crossing upon a highway at a greater rate of speed than that fixed by the act. Since, in the first count of the indictment, it is alleged that the accused approached a crossing where two streets intersected, at a rate of speed between fifteen and twenty miles per hour, it alleged the commission of an unlawful act, in violation of the automobile law of 1910, and was sufficiently definite in its terms.

4. It is quite clear to our minds, however, that the second count in the indictment should have been stricken on demurrer. The provisions of the ordinance of the City of Atlanta, set forth in the indictment, were altogether too uncertain and indefinite to be capable of enforcement. Manifestly it will not do to denounce as a crime the operation of an automobile in a careless and reckless manner without undertaking to define in any way what shall constitute carelessness and recklessness in the manner in which the machine is being operated. The case would vary with circumstances. Sometimes six miles an hour would be a reckless rate of speed. Sometimes fifteen or twenty would not be. A very careful driver might think that ten miles an hour was reckless, and another driver might be of a different opinion. One accustomed to the use of automobiles would think that he could safely employ a certain rate of speed, while one unaccustomed to them would think a very much less rate of speed would be gross recklessness. When put on trial the question of guilt or innocence would depend upon the particular views held by the jury trying the case, or by the judge who presided at the trial. The terms of the ordinance are entirely too

loose and vague and indefinite to be enforceable. This being so, no unlawful act is set forth and alleged in the second count of the indictment, and this count will be held to state no offense.

5. It does not follow, however, that the judgment must be reversed and the conviction set aside. The first count in the indictment was good. The evidence abundantly authorized a finding that at the time of the homicide the accused was driving his machine at a greater rate of speed than that permitted by the automobile act of 1910. There was a general verdict of guilty. There was one good count and one bad count. Each charged the same offense, growing out of the same transaction, and the presumption is that the verdict was founded upon the good count and that the jury disregarded the bad count. *Bullock* v. *State,* 10 *Ga.* 47 (3) (54 Am. Dec. 369) ; *Frain* v. *State,* 40 *Ga.* 529; 1 Bishop, New Crim. Procedure, § 1015.

6. The further point is made that the charge contained in the first count in the indictment was not sustained, for the reason that the two streets named in the indictment did not cross or intersect each other as alleged in the indictment, but that one of the streets ended at the point where it touched the other. It is contended that this is not a crossing or intersecting of highways, within the meaning of the act of 1910, and does. not support the allegation in the indictment that the homicide occurred at the point where Gordon and Holderness streets cross and intersect. We can not assent to this view. On the contrary, we think that the two streets did intersect each other, within the meaning and purpose of the law. Manifestly the object of section 5 of the act was to protect persons who might be upon a highway which approached another highway along which an automobile was being driven. There would be just as much reason for holding that one of the streets ended at the farther margin of the other street as there would be in saying that it ended when it touched the first margin of the street. The highway was in a condition to be used by pedestrians and others entirely across the other highway upon which the automobile was being driven. The latter highway extended across the margin of the former highway, and the case is plainly within th spirit and reason of the law.

7. We do not think the indictment was defective because it failed to charge expressly that the homicide was without malice.

It did allege that the defendant was accused of the offense of involuntary manslaughter. This offense does not involve malice, and is expressly defined in the statute to be the killing of a human being without any intention to do so. The indictment expressly charged that the killing was unintentional, but was done in the commission of an unlawful act. This was sufficient.

8. The presiding judge held that involuntary manslaughter in the commission of an unlawful act was not such a felony as that the court could in its discretion, upon the recommendation of the jury, impose a punishment as for a misdemeanor. Section 1062 of the Penal Code of 1910 provides that "all felonies, except treason, insurrection, murder, manslaughter," and several other felonies named in the statute, may, upon the recommendation of the jury, in the discretion of the presiding judge, be punished as misdemeanors. The question raised depends upon the construction of the word "manslaughter" in the statute. Manslaughter is defined in our code as follows: "Manslaughter is the unlawful killing of a human creature, without malice, either express or implied, and without any mixture of deliberation whatever, which may be voluntary, upon a sudden heat of passion, or involuntary, in the commission of an unlawful act, or a lawful act without due caution and circumspection." Penal Code (1910), § 64. From this definition it is apparent that manslaughter is of two kinds, and that involuntary manslaughter is as much manslaughter, within the meaning of the statute, as voluntary manslaughter. Of course, the word "manslaughter," as used in § 1062, would not embrace involuntary manslaughter in the commission of a lawful act, because that is made a misdemeanor by statute. But we see no reason for holding that the statute does not embrace both voluntary and involuntary manslaughter in the commission of an unlawful act. It is argued that the legislature would not reasonably be presumed to have intended to put involuntary manslaughter in the commission of an unlawful act in the same class as treason, murder, and other felonies mentioned in the section. It is to be noticed that perjury, false swearing, and subornation of perjury and false swearing are likewise not reducible. What the legislature may have intended we have no means of knowing, save as the intention may be gathered from the language employed, and we see no reason why the term "manslaughter," as used in § 1062 of the code, was intended to

have any other meaning than that given to it in § 64 of the code, which had long been in force as the statutory definition of manslaughter when the act of the legislature from which § 1062 was codified was passed.

9. The court refused to charge the jury that the ordinance of the City of Atlanta, referred to in the indictment, was void for uncertainty, and did charge that it was an unlawful act for any person in charge of an automobile to operate the same in a careless and reckless manner upon any of the streets of the city of Atlanta. If the evidence were doubtful as to the guilt of the accused, the judgment of conviction would be set aside and a new trial ordered upon the first count in this indictment, with direction that the second count be stricken, but the evidence practically demands a finding that the accused was violating section 5 of the automobile act of 1910, and that he was at the time of the homicide operating his machine at a rate of speed greatly in excess of the maximum speed prescribed by that act. He was, therefore, plainly and unmistakably committing an unlawful act when he ran over and killed the person named in the indictment. There is no room for doubt on this question. No honest or impartial jury could reach any other conclusion from the evidence in the case. We do not see, therefore, how the accused could justly complain of the charge of the court that if he was operating his machine in a reckless or careless manner, in violation of the city ordinance, he would be guilty. It is utterly immaterial whether the ordinance was valid or not, or whether he was violating it or not. He was clearly acting in violation of the State law, and we will not set aside the conviction because the judge erroneously held that the city ordinance was valid and capable of enforcement, and submitted to the jury the question as to whether the accused was at the time of the homicide violating the ordinance. The same observations apply to the instructions of the court upon that part of section 5 of the act of 1910 which we have held to be too uncertain and indefinite to be enforced as a penal law. In view of the evidence, these instructions could not have been prejudicial.

Upon an examination of the whole record we are satisfied that no error was committed of sufficient materiality to require us to direct a new trial in the case. The accused was properly convicted. Indeed, under some of the evidence his conduct might well have

been held to have amounted to such criminal negligence and disregard of consequences as to justify his conviction of a higher grade of homicide.                                  *Judgment affirmed.*