## UNITED STATES v. OGLESBY GROCERY CO. et al.

(District Court, N. D. Georgia. May 6, 1920.)

1. **War** ⊂⇒4—**Food Control Act within power of Congress.**

Act Aug. 10, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛ℓ–3115⅛r), regulating the production and distribution of food and fuel, was within the power possessed by Congress in time of war in the nature of a police power.

2. **War** ⊂⇒33—**Powers of Congress and legislation thereunder not terminated by armistice.**

The war powers of Congress have not expired, and Act Aug. 10, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛ℓ–3115⅛r), regulating the production and distribution of food and fuel, has not ceased to be effective, notwithstanding the signing of the armistice, in view of the amendment of that act and the proclamations of the President enforcing it since the armistice, and also in view of the provision therein that the fact and date of the termination of the war shall be ascertained and proclaimed by the President.

3. **Constitutional law** ⊂⇒68(1)—**Existence of war a question for Congress and the President.**

The Congress and the President are the constitutional judges of the existence of war or peace, and their decisions are binding on the people and the courts.

4. **Criminal law** ⊂⇒13—**Food Control Act not void for uncertainty.**

Act Aug. 10, 1917, § 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ff), making it unlawful to make any unjust or unreasonable rate or charge in dealing in necessaries, or to conspire to exact excessive prices therefor, is not too indefinite as to the acts forbidden for enforcement.

5. **War** ⊂⇒4—**Food Control Act construed; "unjust;" "excessive;" "unreasonable;" "immoderate;" "exorbitant."**

Within Act Aug. 10, 1917, § 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ff), prohibiting unjust or unreasonable charges for necessaries or conspiracies to exact excessive prices, "unjust" means contrary to justice and right, or wrongful; "excessive" means exceeding what is usual and proper; "unreasonable" means beyond the rules of reason or moderation, or immoderate, or exorbitant; "immoderate" means exceeding just, usual, or suitable bounds; and "exorbitant" means deviating from the normal or customary course, or going beyond the rule of established limits of right or propriety.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Excessive, Unjust.]

6. **War** ⊂⇒4—**Unjustified departure from peace-time prices for necessaries prohibited by statute.**

Act Aug. 10, 1917, § 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ff), prohibits any departure in time of war from the usual and established scale of charges and prices for necessaries in time of peace, which is not justified by some special circumstance, such as increased cost of production and transportation or necessarily increased expenses in the conduct of the business.

7. **War** ⊂⇒4—**Prices fixed by President admissible in prosecution for making unjust charges.**

Under Act Aug. 10, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛g), authorizing the President to prescribe just and reasonable charges for necessaries by persons licensed under that section, a fair price finding, made by the President or his agencies, may be available as evidence in a prosecution under section 2 (section 3115⅛ee) for making unjust and unreasonable charges.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. War ⊚═4—Price finding of President not void for want of hearing.**

A fair price finding, made by the President or his agencies under Act Aug. 10, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛g), is not void because no hearing is provided, as the rates and prices fixed are only prima facie evidence, and a judicial hearing is afforded when the finding is brought into question.

Criminal prosecution by the United States against the Oglesby Grocery Company and another. On demurrer to the indictment. Demurrer overruled.

Hooper Alexander, U. S. Atty., of Atlanta, Ga.

Edgar Watkins and Watkins, Russell & Asbill, all of Atlanta, Ga., for defendant.

SIBLEY, District Judge. An indictment alleging an unjust and unreasonable charge in handling granulated sugar, a necessary, on April 13, 1920, has been met by a general demurrer, based on the supposed insufficiency of the Act of Congress of August 10, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r), regulating the production and distribution of food and fuel in the United States.

[1] 1. The war powers of Congress must be held to be equal to whatever is necessary to successfully prosecute a war and maintain the public safety. In modern wars, not only armies and peoples, but industries, must be mobilized. Every citizen and every dollar must fight. Economic control is as important as military. Disaster and discontent at home are as fundamental and vital as in the field. The powers of Congress, in time of war, are comparable to the police powers of the states in time of peace, and equally incapable of fixed limits. No doubt is entertained of the original power to make this legislation.

[2, 3] 2. It is contended that the war power has expired, and this exercise of it has fallen by the cessation of war. An armistice was signed with Germany on November 11, 1918, and active fighting then ceased. The original act says that its provisions—

"shall cease to be in effect when the existing state of war between the United States and Germany shall have terminated, and the fact and date of such termination shall be ascertained and proclaimed by the President."

No such proclamation has been made by the President. Instead, numerous proclamations have been made by him since the armistice in enforcement of this act. The Congress, itself, on October 22, 1919, amended the very section of it here in issue, and on December 31, 1919, enacted that its provisions as to domestic sugar should continue until June 30, 1920, and as to other sugar until December 31, 1920. The Congress and the President are the constitutional judges of states of war and peace and their decisions should be abided in patience by people and courts. No such abuse of constitutional power or neglect of constitutional duty is here apparent as to require interference by the courts. Hamilton v. Kentucky Distilling Co. et al. (October Term, 1919) 250 U. S. 146, 40 Sup. Ct. 106, 64 L. Ed. ——.

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[4] 3. More serious is the contention that the provisions of section 4, upon which the indictment is based, are too indefinite for enforcement. So far as material, they are:

"It is hereby made unlawful for any person * * * to make any unjust or unreasonable rate or charge * * * in handling or dealing in or with any necessaries; to conspire or combine * * * with any other persons * * * to exact excessive prices for any necessaries."

This language, while it discloses a legislative policy, is said to establish no practical standard of conduct; that ideas of reasonableness and excessiveness are so vague and variant that no dealer could tell whether his charges and prices were unlawful, except by the subsequent opinion of a jury. A process of law, which would condemn one to lose liberty or property for an act without having previously clearly denounced the act as a crime, would not seem to be due process. The subsequent opinion of a jury, making that unlawful which could not before have been known to be so, would have all the oppressiveness of an ex post facto law. Cases are not wanting in which the very terms "reasonable" and "unreasonable" have been held to render criminal statutes too vague for judicial enforcement. Tozer v. United States (C. C.) 52 Fed. 917; Hayes v. State, 11 Ga. App. 371, 75 S. E. 523, and cases cited. On the other hand, where the statute is within legislative power, courts should be slow to say they cannot understand and enforce its provisions and should exhaust efforts at practical construction before doing so. Some uncertainty is inseparable from law and life. The jury is our established tribunal for solving uncertainties in the application of law to life. The Magna Charta declared:

"No free man shall be taken or imprisoned * * * save by the lawful judgment of his peers *or* the law of the land"

—seeming to express content at a condemnation by either. Probably all common-law crimes were originally defined only by the common opinion of the people expressed in the verdicts of juries and judgments of courts. In civil matters to-day omitted stipulations in contracts are supplied by "reasonable time" or "substantial performance" judged of by a jury. In negligence cases juries are told that, while the law lays down a standard of "reasonable and ordinary care and diligence," exactly what acts the defendant should have done or refrained from, in the exercise of such diligence, is for their judgment. The defendant keeps or loses his money accordingly. Every code of criminal laws contains many vague definitions of crime. There are none but statutory offenses in Georgia. Many of the standards set up by her Penal Code use the very term "reasonable" or others as loose, of the application of which the jury must judge, and these statutes are daily upheld and enforced. Section 40 forbids conviction generally, where "it satisfactorily appears there was no evil design, or intention, or *culpable neglect.*" In the law of homicide, section 65 declares:

"For if there should have been an interval between the assault or provocation given and the homicide, *of which the jury in all cases shall be the judges, sufficient* for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge, and be punished as murder."

In dealing with homicide justified by fear of felony about to be committed on person or habitation, section 71 declares "it must appear that the circumstances were sufficient to excite the fears of a *reasonable man*," an ideal perfectly known only to juries. And section 75 says of justification:

"All other instances which stand upon the *same footing of reason and justice* as those enumerated shall be justifiable homicide."

By section 103 "opprobrious words, or abusive language," may be shown in a case of assault and battery, "which may or may not amount to a justification, according to the nature and extent of the battery, *all of which shall be determined by the jury.*" Section 922, dealing with arrests without warrant, requires a warrant to be seasonably secured, and declares, "and no such imprisonment shall be legal beyond a *reasonable time* allowed for this purpose," on pain of criminal punishment under section 106. By section 117 a railway employé "guilty of *negligence,* either by omission of duty or by any act of commission, in relation to the matters entrusted to him, or about which he is employed, from which negligence serious bodily injury * * * occurs," is guilty of a felony. Section 704 makes criminal any person who acquires any money "by *any fraud or ill practice,* in playing at any game," and section 719 "any person using *any deceitful means or artful practice,* other than those which are mentioned in this Code, by which an individual, or a firm, or a corporation, or the public is defrauded and cheated." Section 381 makes criminal open lewdness, or any notorious act of *public indecency tending to debauch the morals;* section 383, the keeping of a *"common, ill-governed and disorderly* house, to the encouragement of idleness," etc. Sections 385 and 386 deal with pictures and writings described as "obscene and indecent or *tending to debauch the morals,"* and 387 makes criminal the use of *"obscene and vulgar or profane* language" in the presence of a female, and *"indecent or disorderly conduct* in the presence of females on passenger cars, street cars, or other places of like character." Similar descriptions of crime are found in the federal Penal Code, §§ 102, 211, and 212 (Comp. St. §§ 10271, 10381, 10382). It is evident that the standards of decency and propriety change with time and place. Under none of these statutes can a man know with certainty how his conduct will be judged by others.

Revised Statutes, § 1342, makes to be military criminals any officer or soldier who (article 20) "behaves with disrespect toward his commanding officer," or who (article 23) "does not use his utmost endeavor to suppress a mutiny," or (article 25) "uses *reproachful or provoking speech* or gestures to another." By article 61 conviction may be had for *"conduct unbecoming an officer and a gentleman,"* and by article 62 "for all disorders and neglects to the *prejudice of good order and military discipline."* Similar provisions occur in Revised Statutes, § 1624 (Comp. St. § 2961), as to the navy. Convictions under these have been frequently upheld. Smith v. Whitney, 116 U. S. 167, 6 Sup. Ct. 570, 29 L. Ed. 601; Fletcher v. United States, 148 U. S. 84, 13 Sup. Ct. 552, 37 L. Ed. 378; Swaim v. United States, 165 U.

S. 553, 17 Sup. Ct. 448, 41 L. Ed. 823; Carter v. McClaughry, 183 U. S. 365, 22 Sup. Ct. 181, 46 L. Ed. 236.

The Supreme Court in Standard Oil Co. v. United States, 221 U. S. 1, 63, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S). 834, Ann. Cas. 1912D, 734, and United States v. American Tobacco Co., 221 U. S. 106, 179, 180, 31 Sup. Ct. 632, 55 L. Ed. 663, held the language of the Anti-Trust Act of 1890 (Comp. St. §§ 8820–8823, 8827–8830), to condemn only "undue or unreasonable" restraints of trade. So construed, the language of that act is quite similar to that now under consideration. In Nash v. United States, 229 U. S. 373, 376, 33 Sup. Ct. 780, 781 (57 L. Ed. 1232), it was said:

"Those cases may be taken to have established that only such contracts and combinations are within the act as, by reason of intent or the inherent nature of the contemplated acts, prejudice the public interests by unduly restricting competition or unduly obstructing the course of trade. * * * And thereupon it is said that the crime thus defined by the statute contains in its definition an element of degree as to which estimates may differ, with the result that a man might find himself in prison because his honest judgment did not anticipate that of a jury of less competent men."

Nevertheless the Anti-Trust Act was upheld as a sufficient criminal statute.

[5, 6] Evidently standards may exist in law or fact to which the Legislature may refer, and the existence of them is a matter of importance. It must be noted that the act of August 10, 1917, is dealing with necessaries; articles that, by reason of their necessity, are in common use, dealt in continuously and everywhere. The range of prices and profits in them in time of peace is well established and well understood. The changes that occur in such prices, and the causes therefor, are well known. The dealer is not in a novel venture. The descriptive words of the act are thus defined by Webster:

Unjust, as "contrary to justice and right; wrongful." Excessive, as "exceeding what is usual and proper." Unreasonable, as "beyond the limits of reason or moderation; immoderate; exorbitant." Immoderate, in turn, means "exceeding just, usual or suitable bounds." Exorbitant means "deviating from the normal or customary course; going beyond the rule or established limits of right or propriety."

The words used by Congress in reference to a well-established course of business fairly indicate the usual and established scale of charges and prices in peace times as a basis, coupled with some flexibility in view of changing conditions. The statute may be construed to forbid, in time of war, any departure from the usual and established scale of charges and prices in time of peace, which is not justified by some special circumstance of the commodity or dealer. Evidently increased costs of production and transportation would justify a corresponding increase in price, and necessarily increased expenses in the conduct of business would justify an increased charge for handling; but the existence and sufficiency of the justification is left, in each case, to the courts. This does not differ, in substance, from the situation arising under the Georgia homicide statutes which forbid generally the killing of a human being, but admit of justifications and

mitigations which are measured finally by the opinion of juries. The dealer knows what was, in time of peace, usual and customary. Within that limit he is safe. He judges of the justification for departure from it at his own risk. That the usual and customary may serve as defining a crime was ruled in Omaechevarria v. Idaho, 246 U. S. 343, 38 Sup. Ct. 323, 62 L. Ed. 763.

[7, 8] Yet further, section 5 provides:

"The President may, in lieu of any such unjust, unreasonable * * * charge, * * * find what is a just, reasonable * * * charge, * * * and in any proceeding brought in any court such order of the President shall be prima facie evidence."

This provision is in connection with a system of licenses, which was inaugurated by proclamation as to sugar and is still of force; but it need not necessarily be limited thereto, and such fair price finding made by the President or his agencies may be available as evidence in a case such as this, not apparently based on section 5. No force is perceived in the argument that the price finding is utterly void because no hearing is provided. The rates and prices fixed are made only prima facie evidence and a judicial hearing is afforded when the finding is brought into question. The price fixed is a practical guide to the dealer which, if observed, would no doubt in any case protect him from successful prosecution. If he departs from this as well as from what was usual and customary, he does so at the risk of what a court and jury may determine to be unjust and unreasonable or excessive under all the proved circumstances. While the statutory definition is vague, the subject-matter would hardly admit of inflexible treatment.

In view of what has been said, it will not be held void for uncertainty, and the demurrer will be overruled.