## GEORGE P. BUCKEY ET AL.

*vs.*

## DAVID G. WHITE.

*Collision of Automobiles—Intersecting Roads—Joint Tort Feasors—Instructions—Evidence.*

There being evidence tending to show that defendant's automobile was on the wrong side of the road and traveling over a thoroughfare upon which at the time there were many other automobiles and pedestrians, at what, under the circumstances, might be considered an excessive speed, and that the driver of plaintiff's car was unable to avoid the collision because of the position of defendant's automobile on the wrong side of the road, *held* that the question of contributory negligence on plaintiff's part was for the jury.                    pp. 127, 128

When the nature of the act relied on to show contributory negligence can only be determined by all the circumstances attending the transaction, it is within the province of the jury to characterize it.                    p. 128

A lateral road connecting with, but not crossing, another road, is an intersecting road within Acts 1916, Ch. 687 (Code, Vol. 4, Art. 56, Sec. 163), providing that "all vehicles shall have the right of way over other vehicles approaching at intersecting roads from the left, and shall give the right of way to those approaching from the right."                    p. 129

In an action against the owner of an automobile and his son, for damage caused by its collision with another automobile while it was being driven by the son, it was error to instruct the jury that their verdict must be for plaintiff if they find that the defendant's son did not give the right of way to plaintiff, approaching from the right, at intersecting roads, and that his failure to do so caused the collision, this in effect telling the jury that, if the son, through his negligent management of an automobile, damaged plaintiff's car under such circumstances as to give a right to compensation for such damage, then

the father, not referred to in the prayer, is a joint *tort feasor* and jointly liable for the negligent act.　　　　　p. 130

Under Code, Art. 5, Sec. 9, that an instruction wrongfully assumed that one of the defendants was responsible for the negligent acts of his codefendant is not available on appeal, if no objection for such defect was made in the lower court.　　p. 131

*Decided November 17th, 1920.*

Appeal from the Circuit Court for Frederick County (WORTHINGTON and PETER, JJ.).

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Frank L. Stoner* and *D. Princeton Buckey,* for the appellants.

*Leo Weinberg,* for the appellee.

OFFUTT, J., delivered the opinion of the court.

George P. Buckey, one of the appellants at the time of the accident out of which this case grew, conducted a hardware store at Union Bridge in Frederick County, where he resided with his family. His son, Earl Buckey, the other appellant, who was then about twenty-two or three years of age, lived with him and assisted him in his hardware business. Some time before, the father had bought an automobile runabout which was used in connection with his hardware business and appears to have been also used from time to time for the convenience of his family. He allowed his son Earl Buckey the privilege of using this car whenever he wished and, on the evening of July 14th, 1916, the son started to drive it from his home to Braddock Heights, where he expected to attend a dance. On the way he called for and was joined by three friends, who were with him at the time of the accident. The sole purpose for which he was using the car on this trip was

his own pleasure and his business with it, to quote his testimony was "just pleasure, going up to the mountain to dance or amuse ourselves in any other way," and was not in any way connected with the business at Union Bridge. In going to Braddock Heights he travelled along Maryland Avenue. A short distance from Braddock Heights this avenue connects with a road leading from it to the southern entrance of the Hotel Braddock. The testimony regarding the character of the road is conflicting. It is a lateral road, running at an angle to Maryland Avenue, with which it connects, but which it does not cross, and there is testimony in the case tending to show that it had been laid out, graded and used by the public as a thoroughfare for a number of years and especially by persons having occasion to go to or from the Hotel Braddock. As Buckey approached the point at which this lateral road joins Maryland Avenue, the appellee's car, containing eight persons and driven by his son, Bruce G. White, approached Maryland Avenue along this lateral road. When the appellee's car was within a short distance of Maryland Avenue, which he was approaching, his attention was called to the lights of Buckey's car, which was then approaching him from his left about three hundred and fifty feet away. It was then between eight and nine o'clock in the evening and, while it was not entirely dark, it was dark enough to require lights on the automobile. The testimony concerning the circumstances under which the accident occurred is conflicting, but that of the plaintiff tends to show that as the appellee's car approached Maryland Avenue, its head lights were turned on, and that, as soon as he was aware of the approach of the appellants' car, the driver of the appellee's car sounded his horn and slowly drove into Maryland Avenue and started to turn in a northerly direction towards Frederick. When he reached Maryland Avenue he saw that the appellants' car, which was approaching from his left, was on the wrong side of the road, and that if he, continuing on his course, drove on the right-hand side of the road to which he

was entitled, his car would collide head on with the Buckey car, and he thereupon brought his car to a stop nearly across the road. The appellants' car, traveling at a speed variously estimated by the appellee's witnesses at from twenty-five to thirty-five miles an hour, continued to approach on the appellee's side of the road and struck the left side of his car. It was further testified that the appellee was prevented from completely crossing over to the right-hand side of Maryland Avenue by the position of the appellants' car on that side of the road. As a result of the collision the appellee's car was damaged and this suit was brought to recover for the loss thereby sustained.

The verdict of the jury was in favor of the plaintiff and from the judgment thereon this appeal was taken.

The declaration filed in the case appears to be in the usual form and, as no objection was urged to it in this Court, it is sufficient to say that the demurrer to it was properly overruled.

The record contains but one exception, and that involves the correctness of the court's ruling on the prayers. The plaintiff offered two prayers, of which one was granted, and the defendants five, of which the first, second and third were granted. The appellants' fourth prayer was but a paraphrase of their first prayer and there was no error in its refusal. By their fifth prayer the court was asked to direct a verdict for the defendants on the theory that the undisputed evidence showed that the negligence of the driver of the plaintiff's car directly contributed to the happening of the accident. This prayer was properly refused. There was evidence tending to show that at the time of the accident the car driven by Earl Buckey was on the wrong side of the road and traveling over a thoroughfare upon which there were at the time many other automobiles and pedestrians, at what, under all the circumstances, might well have been considered an excessive rate of speed, and that the driver of the appellee's car was unable to avoid the collision because of the position of the appellants'

car on the wrong side of the road.   Under such circumstances the existence of contributory negligence could only have been determined by a consideration of all the facts and circumstances surrounding the accident and, as was said by JUDGE BRISCOE, speaking for this Court in *Waltring* v. *James*, 136 Md. 406, "when the nature of the act relied on to show contributory negligence can only be determined by all the circumstances attending the transaction it is within the province of the jury to characterize it."

By the plaintiff's second prayer, which was granted, the jury were instructed in substance that "all vehicles shall have the right of way over other vehicles approaching at intersecting roads from the left, and shall give the right of way to those approaching from the right," and that if at the time of the accident Earl Buckey while driving an automobile approached the plaintiff's car from the left at intersecting roads and failed to give it the right of way, and that the accident was caused by such failure and that the plaintiff and his son who was then and there driving his car acted with due care and caution immediately preceding the accident, their verdict should be for the plaintiff.   Objection was made to this prayer on two grounds.   One, that it "wholly ignores the fact that if the plaintiff by the exercise of reasonable and ordinary care could have avoided the injury complained of that then he is not entitled to recover."   Inasmuch as the prayer did require the jury to find that at the time of the accident the plaintiff and the driver of his car "acted with due care and caution" before they could find their verdict for the plaintiff, the force of this objection is not apparent.

The second ground of objection is that the prayer is misleading because it instructs the jury as to the law of the road relating to the respective rights of vehicles approaching each other at intersecting roads.   The reason assigned for this objection was that there was no evidence in the case of any intersecting roads and that therefore the prayer was misleading.

The theory upon which this objection rests is that a lateral road connecting with, but not crossing another road, does not "intersect" the latter within the meaning of the statute, and that the driver of an automobile while driving it along a main or trunk road is not required to yield the right of way to a machine approaching from his right along such a lateral road. Such a construction of the statute is, in our opinion, too narrow, and is opposed to its true meaning and intent. The purpose and design of the statute is to protect the travelling public against collisions at points where roads running at an angle to each other join, and to accomplish this end it provides a simple rule of universal application which so clearly defines the respective and relative rights of the drivers of automobiles approaching each other over such connecting roads that it eliminates the confusion and uncertainty, which formerly prevailed under such circumstances, as to which car was entitled to the right of way. The mischief for which the act was enacted as a remedy was this: That in the case of automobiles approaching each other along connecting roads running at an angle to each other in such a manner that unless one of them gave way to the other a collision would result, in the absence of some rule on the subject, there would be no way of promptly determining which should give way to the other, and the confusion incident to such situations was the cause of many accidents. The danger of such accidents, which the Legislature intended by this statute to remove, was the same at all points where two roads joined, and whether the roads so connecting actually crossed each other or merely connected could not possibly lessen or increase that danger. Since such was the intention of the Legislature, the language of the statute should be so construed as to give effect to such intention, unless such a construction would be clearly unreasonable. *Hooper* v. *Creager,* 84 Md. 195; 25 *R. C. L.,* par. 254, "Statutes" 1015; *Commercial Building Assoc.* v. *Mackenzie,* 85 Md. 132.

And while therefore, the word "intersect" literally means to cut into or between, or to cross, and does not, ordinarily, mean to begin at, or start from, a given line, yet in view of the purpose of the act and the intention of the Legislature, it would be an absurd refinement to give it so narrow and limited an interpretation as would result from holding that the phrase "intersecting roads" as used in the act does not include all roads joining each other at an angle whether they cross each other or not. Some apprehension was expressed that such a construction would unreasonably limit the speed at which automobiles can be driven over the roads of this State, but as the highways in the state are for the service and convenience of all, and since one of the primary purposes of the statute is to insure the safety of the traveling public, if the accomplishment of that purpose is inconsistent with the maintenance of high rates of speed by persons driving automobiles on such highways, nevertheless the management of such automobiles will have to be subordinated to the public safety.

There is, however, another and more serious objection to this prayer, and that is that it predicates the plaintiff's right to recover against both defendants upon the negligence of only one of them, in doing an act with which the other defendant had no connection whatever, and over which he had no control, at a time when there was no relation of any kind between the two defendants which made either responsible for the acts of the other. The prayer, after instructing the jury as to the law of the road, reads as follows: "If the jury believe from the evidence that the defendant, Earl Buckey, on the night of July 14, 1916, was driving an automobile, approaching from the left, at intersecting roads, the car belonging to the plaintiff, and shall further find that said Earl Buckey on the occasion aforesaid, did not give the right of way to the plaintiff's vehicle which was approaching from the right, if they so find, and that the plaintiff and his son, who was then and there driving the plaintiff's car acted with due

care and caution immediately preceding the accident, if they shall so find, and that the failure of the said Earl Buckey to give the right of way caused the collision in this case, then their verdict must be for the plaintiff." By this prayer the jury were told that if Earl Buckey through the negligent management of an automobile damaged the plaintiff's car under such circumstances as to give him a right to compensation for such damage, that then his father, who is not referred to in the prayer, is a joint *tort feasor* with Earl Buckey and jointly liable with him for his negligent act. The effect of this prayer was to instruct the jury that the appellant, George P. Buckey, was responsible for the negligent operation of an automobile by his adult son, whether he had anything to do with such operation or not. The question as to whether he would have been jointly responsible under all the circumstances of the case with his son is not before us and will not therefore be considered, nor was this question submitted to the jury by this prayer. But under it they were at liberty to find a verdict against both defendants for a negligent act which they may have found was due to the conduct of only one of them, and with which the other had no connection. That is not the law, and there was error in granting this prayer.

But in the opinion of a majority of the court, this error cannot be considered, because in thus stating the law this prayer assumed that George P. Buckey was responsible for the negligent acts of Earl Buckey, his son, and that under Section 9, Article 5, Code Pub. Gen. Laws, no objection having been made to the prayer on that ground in the court below, it cannot be decided here. The prayer being otherwise free from objection and the record being otherwise free from error, the judgment will be affirmed.

*Judgment affirmed, with costs.*