LILLIE CLARKSON AND RUTGERS CLARKSON, HER HUSBAND, RESPONDENTS, v. LOUIS LEY, APPELLANT.

Submitted October 26, 1929—Decided February 3, 1930.

For the appellant, *Collins & Corbin* (*Edward A. Markley,* of counsel).

For the respondents, *Ward & McGinnis* (*Peter J. McGinnis,* of counsel).

The opinion of the court was delivered by

TRENCHARD, J. This is the appeal of the defendant below from a judgment for the plaintiffs (husband and wife) entered upon a verdict in an action to recover damages resulting from an injury to Mrs. Clarkson inflicted by the automobile driven by the defendant.

The defendant's first point is that the trial court should have directed a verdict in favor of the defendant because the plaintiff, Lillie Clarkson, was guilty of contributory negligence as a matter of law.

Our answer to this point is that she was not guilty of contributory negligence as a matter of law.

At the trial it was open to the jury, if they saw fit, to infer from the evidence the following matters of fact: On December 3d, 1926, at six-thirty P. M., Mrs. Clarkson (hereinafter called the plaintiff) and other passengers alighted from a bus at the southeast corner of Lexington avenue and Holdsworth Court, two public streets in Passaic. The immediate vicinity was well lighted with several large electric lights. She waited on the curb for the bus to pull away. She wished to cross Lexington avenue (which was fifty feet wide) to her home directly opposite. She looked down the avenue to the south and saw an automobile about two blocks away. She then took two or three steps off the curb and looked to the north and saw the automobile of the defendant approaching, apparently at a moderate rate of speed, about two hundred and fifty or three hundred feet away. There were no other vehicles in the immediate vicinity. She calculated that she could safely cross, and immediately following other passengers who had alighted from the bus, she proceeded directly across, and had gotten about five feet beyond the center of the street when she was hit by the defendant's car (which meanwhile had increased its speed and gave no audible warning) and thrown fifteen or twenty feet to the sidewalk and was severely injured.

Of course the duty of exercising reasonable care between persons using the highways is mutual, and each person may assume that others traveling on the highway will comply

with that obligation. Hence a pedestrian has a right to assume that the driver of an automobile will exercise proper caution in approaching a street crossing. And where, as here, a pedestrian when about to cross a highway at a street intersection sees the defendant's automobile approaching, about two hundred and fifty or three hundred feet away, apparently at moderate speed, the question whether the pedestrian, in the exercise of reasonable care, should have apprehended that it would reach and strike her before she could pass, is one for the determination of the jury. *Tischler* v. *Steinholtz*, 99 *N. J. L.* 149; *Venghis* v. *Nathanson*, 101 *Id.* 110.

The next point is that the trial court erred in instructing the jury that at the time the plaintiff was injured she was upon a crosswalk, if she were within the confines of that portion of the highway which would be embraced within the boundaries of the lines of the sidewalk, if continued across the street.

We think that was not erroneous. This accident occurred in 1926. Our Traffic act then in force (*Pamph. L.* 1915, *p.* 305, § 25; *Pamph. L.* 1916, *p.* 49, § 12) in effect declared that in places where (as in the instant case) houses are on the average less than one hundred feet apart, pedestrians should have the right of way over vehicles at any street crossing, in the absence of any municipal regulation relating to such crossing (of which there was none), and further declared that "the word 'crossing' includes all duly indicated crossings marked by a pavement or otherwise, and the most direct route from curb to curb at the intersection of streets." *Pamph. L.* 1915, *p.* 286, § 1 (4).

Lexington avenue, which plaintiff was crossing, was completely paved between the curbs with asphalt, and while there was no marking on the pavement indicating a crossing, yet it was open to the jury to find that the plaintiff was using a crosswalk because the evidence showed that she stepped off the intersecting sidewalk at the corner of Holdsworth Court and Lexington avenue and was crossing the latter street by "the most direct route from curb to curb at the intersection of streets."

The defendant contends that there was no "crossing" or crosswalk there, within the meaning of the statute, because there was not at this point any "intersection of streets," and that contention is based on the fact that the public street known as Holdsworth Court which enters Lexington avenue at a right angle, does not continue across and beyond the avenue.

We think that such contention is fallacious.

The purpose and design of the provisions of the statute in question was to protect the traveling public against collisions at thickly populated points where, as here, public highways running at right angles to each other join, and to accomplish this it provides a rule which defines the respective and relative rights of the drivers of vehicles and pedestrians approaching each other over such connecting highways, thereby eliminating the confusion and uncertainty which formerly prevailed in such circumstances, as to which should have the right of way. The mischief which the act was designed to remedy was the danger, frequently resulting in accidents, consequent from confusion and uncertainty as to the right of way. The danger of such accidents, which the legislature intended by the statute to remove, so far as possible, was much the same at a point where two highways join at right angles, whether the highways so connecting actually crossed each other or merely connected but did not cross. In the interpretation and construction of statutes the primary rule is to ascertain and give effect to the intention of the legislature, and the intention of the legislature is to be ascertained not merely from the language of the act taken as a whole, but where the language is not free from ambiguity, from the application of the act to existing circumstances and necessities.

Applying that rule to the provisions of the statute in question we think that the language "intersection of streets" in the provisions of our Traffic act of 1915 relating to the respective rights of vehicles and pedestrians at such crossings, includes a street which enters another highway at right angles, but does not cross it; and a pedestrian is upon

a crosswalk or "crossing" if she is within the confines of that portion of the highway which would be embraced within the boundaries of the lines of the sidewalk of the street entering the other highway at a right angle, if continued across the other highway.

Such certainly is the great weight of authority. It was so held in effect in the following well-considered cases construing similar language of similar statutes: *Buckey* v. *White*, 137 *Md.* 124; 111 *Atl. Rep.* 777; *Holman* v. *Ivins*, 150 *Minn.* 285; 184 *N. W. Rep.* 1026; 21 *A. L. R.* 964; *Neumann* v. *Apler*, 95 *Conn.* 695; 112 *Atl. Rep.* 350; 21 *A. L. R.* 970; *Pangborn* v. *Widdicomb*, 223 *Mich.* 181; 193 *N. W. Rep.* 817; 31 *A. L. R.* 485; *Manlay* v. *Abernathy*, 167 *N. C.* 220; 83 *S. E. Rep.* 343; *Hayes* v. *State*, 11 *Ga. App.* 371; 75 *S. E. Rep.* 523. California and Massachusetts have decisions to the same effect, but both have statutory provisions defining the meaning of intersecting highways. See, also, cases collected in notes in 21 *A. L. R.* 979; 31 *Id.* 488; 37 *Id.* 500, and in *Babbit Motor Vehicles* (2d ed.) § 383, and *Huddy Automobiles* (5th ed.) 23.

It is argued that such construction would unreasonably limit the speed at which automobiles can be driven over certain streets of built-up sections of this state. To that our answer is that our highways are for the service and convenience of all, and since the primary purpose of the provisions of the statute in question was to guard, so far as may be, the safety of the traveling public, if the accomplishment of that purpose is inconsistent with the maintenance of high rates of speed by automobiles at some places on some highways, the management of such automobiles will have to be subordinated to the public safety.

The next and last point is that the trial court erred in instructing the jury as follows:

"When a pedestrian and an automobile, moving in different directions, approach such a crossing at the same time or in such a manner that if both continue their respective courses there is danger of a collision, then the pedestrian is entitled

to first use the crossing, and it is the duty of the driver of the automobile to stop or to so reduce speed as to give such pedestrian a reasonable opportunity to pass in safety, and to that end to have such automobile under such control as to enable him to do so."

Such an instruction is not erroneous, when limited, as it was in the present case, to a street crossing at a place where the houses were on the average less than one hundred feet apart, and where there was no municipal regulation relating to the crossing, in view of the provisions of the Traffic act of 1915 in effect when the accident occurred. *Venghis* v. *Nathanson,* 101 *N. J. L.* 110; *Bora* v. *Yellow Cab Co.,* 103 *Id.* 377.

The defendant argued in this connection that the trial judge did not make plain to the jury that in order for the plaintiff to recover, it must appear that the defendant failed to exercise reasonable care, which failure was the proximate cause of the plaintiff's injury, and that the failure of the plaintiff to exercise reasonable care in the circumstances would, if it appeared, defeat her recovery.

But that contention is without foundation in point of fact. The judge did so charge fully and correctly elsewhere in his charge.

The judgment below will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, TRENCHARD, KALISCH, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ.  13.

*For reversal*—None.